**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| DONNA TINNERMON, et al., | |
| Plaintiffs, | |
| v. | CAUSE NO.: 1:19-CV-336-HAB |
| REV RECREATION GROUP, INC. | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiffs, Donna Tinnermon (Tinnermon) and disabled Army veteran Roger McKay (McKay), planned to travel the country together with their respective grandkids in tow. Together they bought a recreational vehicle (RV) from Defendant's authorized dealer in Wildwood, Florida for $110,000. From the date of purchase Plaintiffs allege that the RV suffered from many defects and malfunctions that were not fixed within a reasonable amount of time or after a reasonable number of attempts.

Plaintiffs' Complaint includes three Counts against Defendant. Plaintiffs allege state law claims for breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act (MMWA), and violations of state consumer protection statutes based on the Defendant's representations during the transaction, failing to remedy defects, failing to honor a request to take the RV back, and breach of warranty. Plaintiffs seek relief in the form of damages or, in the alternative, relief in the form of rescission of the contract.

Before the Court is Defendant, REV Recreation Group, Inc.'s (REV) Motion for Summary Judgment (ECF No. 49). The motion is fully briefed and ripe for consideration. (ECF Nos. 50, 59, and 63). Because the Court finds that Plaintiffs did not deprive REV of the opportunity to cure as

a matter of law and questions of material fact abound relating to the alleged defects, and whether the repair time was reasonable, summary judgment is DENIED as to the breach of warranty and MMWA claims. The Motion is GRANTED as to Plaintiffs' IDCSA claim.

## FACTUAL BACKGROUND

### a. The Purchase of the RV and its Alleged Defects

In July 2018, Plaintiffs purchased a 2017 Holiday Rambler Vacationer RV ("the RV") from Alliance Coach ("Alliance") in Wildwood, Florida. The RV came with a Limited Written Warranty covering the "house portion" of the motorhome for one year and structural defects for three years. (ECF No. 50-3 at 8, Warranty).

Before its sale to the Plaintiffs, Alliance accepted delivery of the RV from REV's factory, but, upon inspection, Alliance noted items needing repair. Alliance's Product Delivery Receipt dated January 30, 2017 (ECF No. 59-4) listed a dozen items that were damaged or required replacement. In February 2017, REV approved warranty claims for repair of ten items including: an outside faucet leak, water leak under shower wall, excessive glue and overspray in various areas, and myriad other cosmetic issues. In May 2018, Alliance repaired another three items under the Warranty, including the passenger's slide out (kitchen slide out), bed box door and the rear air conditioner.

During preliminary purchase discussions with the Plaintiffs and in anticipation of Plaintiffs' purchase, Alliance performed a second inspection of the RV on July 10, 2018. During this inspection, Alliance identified additional problems which Alliance then repaired under the Warranty, (ECF No. 59-13). The Plaintiffs finalized their purchase and conducted a walk-through

of the RV on July 28, 2018.[1] Because defects were found during the walk-through, Plaintiffs left

the RV at Alliance Coach for warranty repair. The defects found at that time included:

- the front and rear A/C units did not cool;
- storage bay doors were sharp to the touch;
- kitchen slide-out tilts downward when extended;
- crack at base of toilet
- cabinets pop open in transit
- bedroom sliding door was off track
- sliding door panel was loose
- stain in bathtub

Alliance promised Plaintiffs that when they returned to pick up the RV, it would be in "ship

shape" with all repairs made. But when the Plaintiffs picked up the RV many repairs were not

complete, and the RV was, according to Plaintiffs, far from "ship shape." (McKay Decl., ECF No.

59-35, ¶¶ 7, 8).

In September 2018, Plaintiffs ventured to Alabama in their new RV. Plaintiffs experienced

multiple problems during this adventure, some of which they believed had been fixed by Alliance

in August. Plaintiffs experienced these problems:

- kitchen slide out was not working properly and several cables and the wood trim broke while trying to get the slide in and out
- there was excessive heat from the doghouse
- condensation on the dashboard from the dash A/C
- blinds would not go down
- TVs did not work
- Toilet had a tear in it
- The awnings wouldn't come out
- The A/C wasn't blowing cold air
- The house batteries would not hold a charge
- The pantry door wouldn't open

---

[1] As REV points out, the repairs before the Plaintiffs' purchase while Alliance was holding the vehicle for resale did not occur under the Limited Warranty that attached at the time of Plaintiffs' purchase. Thus, REV argues that warranty repairs occurring before the Plaintiffs' purchase should not be counted since the Limited Warranty became effective only after Plaintiffs' purchase of the RV.

Upon their return, McKay called Alliance and explained the problems they had with the RV on the trip. (McKay Decl. ¶ 10). The next week, McKay took the RV to Alliance for warranty repair for over two dozen repairs. Plaintiffs submitted to Alliance a handwritten document cataloguing the defects. (ECF No. 59-18). Of those two dozen repairs, Plaintiffs assert that many of the repairs were repetitive. According to them, the kitchen/passengers side front slide out had been presented to Alliance three times for repairs[2]; the Rear A/C issue had been presented four times, and problems with the overhead galley cabinet, paint damage to the bedroom slide, sharp storage bay doors, defective house battery and crack at the base of the toilet had all been presented twice for repair.

Beginning in December 2018, McKay contacted REV directly several times for help because he did not believe the repairs were being done timely. (McKay Decl. ¶12). McKay states that during one of the calls he asked if he "could bring my RV up to REV in Indiana at my expense for repairs" but was told by REV that all warranty repairs needed to be addressed by Alliance. (*Id.* ¶ 12). REV denies that this conversation occurred.

McKay visited Alliance to check on the status of the repairs in January 2019. He contends that many repairs had not been made and the house battery was dead. (McKay Decl. ¶ 14). In February, McKay tried to pick up the RV but when he arrived, he discovered that Alliance had not performed all the repairs, the battery was still dead, and Alliance had driven six screws through the slidewall when performing repairs. (*Id.* ¶ 15). In March 2019, McKay picked up the RV from Alliance, but the house battery would still not hold a charge. On March 10, 12 and 14, 2019, the

---

[2]The kitchen slide out has a repair history that consists of different components of the slide being complained about and repaired at different times. Plaintiffs complained that the slide was inoperative, tilting downward, and that cable guides were broken. The parties' dispute whether these are three separate problems for purposes of the warranty count or whether they are a combined single problem presented three times. Resolution of this issue is unnecessary to resolve the pending motion.

house battery repeatedly died. Alliance then sent a technician who replaced the house battery without charge to the Plaintiffs. This was done even though the house battery is not covered by REV's warranty.

All told, the RV was out of service for repairs four times for 207 days between July 3, 2018, and March 25, 2019. Plaintiffs allege that 57 total defects were subject to repair under the warranty and seven of those defects were subject to repair more than once. Plaintiffs also allege that 26 defects remain unrepaired as follows:

- Soundbar not hooked up
- Pocket door latch bent
- Missing knobs on dryer
- Front A/C does not cool
- Rear A/C does not cool
- Kitchen slide out tilts downward when extended
- Passengers side front slide out inoperative
- Rubber gasket loose at windshield
- Steps difficult to move
- Blu-ray poor connection
- Bose system remote missing
- Multiplex inoperative
- Wood putty on wall
- CB Inoperative
- Excessive Heat from the dog house
- No insulation in generator
- Condensation on dash from A/C
- Bathroom door guide loose
- Storage bay doors sharp to touch
- Daylight at bottom of bedroom slide
- Lights flicker when generator on
- Gutter extension too short
- TVs not working
- Battery won't hold charge
- Auto jacks not functioning
- Awning won't come out

Because of these unrepaired defects, Plaintiffs stopped using the RV in March 2019 and contend that its value is diminished from these unrepaired defects.

### b. REV's Limited Warranty

The Plaintiffs' RV was covered by a warranty that created bilateral obligations on the parties. Alliance and REV agreed to repair defects and the Plaintiffs were required to provide the dealer and manufacturer with notice and an opportunity to cure the defects. Under the section headed "Owner's Obligations":

> Written notice of defects must be given to the selling dealer or manufacturer within thirty (30) days of discovery by owner …The owner shall deliver the motor home to the dealer … for warranty  service.
>
> …[T]he manufacturer requires that the owner first provide it with direct written notification of any alleged unrepaired defect, or any other dissatisfaction experienced with the motor home so the manufacturer has the opportunity to cure the problem or dissatisfaction itself. Giving the manufacturer this direct notice and opportunity to cure enables the manufacturer to supplement prior efforts by its authorized dealers so any ongoing problem or dissatisfaction can be resolved or addressed by the manufacturer.

As for the manufacturer's obligations, "upon receipt of notice of a claim, where the dealer was unable or unwilling to resolve the problem," the manufacturer would "repair or replace any parts necessary to correct defects in material or workmanship." (Warranty, p. 8).

On May 17, 2019, Plaintiffs, through counsel, sent REV written notification of the unrepaired defects and communicated their dissatisfaction with the RV. (Letter, ECF No. 59-27). At the end of the Letter, Plaintiffs' counsel wrote: "My clients want your company to cure these acts by repurchasing this defective RV back, refunding their money, and paying the fees/costs they are entitled to by law…" (*Id.* at 4). REV did not respond to the Plaintiffs' request which led to the present suit being filed a few months later.

### c. Competing Experts

The parties each retained experts to assess the alleged problems with the RV. Plaintiffs retained Phillip Grismer (Grismer) of P.J.G. Consulting & Appraisal, who inspected the RV on September 3, 2020, at a campsite in Lincoln, Alabama.

Before his inspection, Grismer reviewed REV's build documents for the RV and the RV's repair history. Grismer's expert report reflects his view based on the build documents and repair history that manufacturing defects existed with the RV from the initial build but many had been remedied by Alliance before his inspection. (ECF No. 59-36, Grismer Report at 3-5). At the time of his inspection, Grismer tried to make a thorough assessment of the RV, but his efforts were thwarted by the fact that the house and chassis batteries were dead and would not hold a charge. Grismer could not operate the RV or conduct a road test. There was no power to the interior of the RV even when plugged into shore power. Grismer observed that there was no obvious break or damage to the umbilical cord or the electrical room panel and concluded that the condition is "consistent with a defective transfer switch, defective breaker panel defective wiring." (Grismer Report at 6.). Given the lack of power, Grismer could not assess whether the galley sink, shower, toilet, water heater, and back up water pump functioned properly. Likewise, he could not test some of Plaintiffs' other complaints (whether allegedly repaired) such as problems with the A/C dash and rear A/C, sound bar, kitchen slide, blue-ray player, house multiplex system, cabinets opening during transit, excessive heat and noise from doghouse, condensation on dash from air conditioning, bathroom door rattles when driving, entry door step did not extend, roof air conditioner problems and a host of others. Grismer noted that the entry steps were dangerously high and declared "this stair arrangement is the worst I have seen." (*Id.* at 7). Grismer then identified a number of additional unrepaired defects, including: upper windshield gap, complete

failure of the water and electrical systems, gaps and visible daylight in the rear left slide out and visible daylight around the ceiling trim. (*Id.* at 7).

Ultimately, Grismer opined that there existed an excessive number of assembly defects which needed correction during construction of the RV, that the total amount of repair time was unreasonable and excessive, despite over 200 days to repair the defects, REV did not do so, and that the defects with the RV substantially impaired the RV's value. He also stated that the RV was not merchantable at the time of sale or during the time of his inspection.

REV had the RV examined by its own expert, Tom Fribley (Fribley) on January 14, 2021. (ECF No. 59-38, Fribley Report at __). Fribley examined the RV for 33 complaints outlined by the Plaintiffs in their depositions, complaints listed in their complaint, and those in Grismer's expert report. Unlike Grismer, Fribley could conduct operational testing of all components but the water system. Fribley's report notes that he had to "jump start chassis battery" and activate the generator, which ran without incident. Fribley found "no evidence of defects in either the wiring or breaker panel as stated in plaintiff's expert report…no defect could be confirmed." (Fribley Report at 7-8, item 27). Fribley noted that, "the house batteries were in such a deteriorated state due to lack of maintenance that they would not take a charge." (*Id.*).

Fribley's examination revealed that these components operated as designed or the complaints were successfully repaired after prior warranty service: kitchen slide room was operational and no damage to floors or cabinet doors (Fribley Report, at 2, item 1);[3] report of cabinets opening in transit was not confirmed (*Id.* item 2); all air conditioning units cooled to industry standards including both roof air conditioners (*Id.* at 8, item 21); bedroom sliding door

---

[3] Fribley found that the slide room operated as designed both in and out and he confirmed that the cable support and wire system repairs succeeded. He did find that the slide room ram cover required minor cosmetic adjustment because of its age.

operated properly (*Id.* at 3, item 4); bathtub stain had been repaired (*Id.* at 3, item 5), pantry door functioned properly *Id.* at 3, item 6), wood putty on walls was not found (*Id.* at 3, item 7); excessive heat from doghouse was not found (*Id.* at 4, item 9), no condensation appeared on dash after running A/C for 90 minutes (*Id.* at 4, item 10); bathroom door operated as designed (*Id.* at 4, item 11), rain gutter extensions worked (*Id.* at 4, item 12); storage bay doors were not sharp to touch (*Id.* at 4, item 13); the crack at base of toilet was repaired (*Id.* at 6, item 20); shower head was repaired and secured to wall (*Id.* at 8, item 30) and the backup cameras were functional and successfully repaired (*Id.* at 8, item 29).

Fribley examined other complaints from Plaintiffs and concluded one or more of the following: (1) Plaintiffs did not report the complaint to REV during the warranty period; (2) the complaint was not a not limited REV warranty item or was covered by a different warranty; (3) the complaint fell under a consumer's maintenance obligation; or (4) no defect was found. Falling within this category of complaints were: missing crown molding next to refrigerator (confirmed, not reported) (*Id.* at 5, item 14); daylight at the bottom of the wardrobe slide room (confirmed, not reported) (*Id.* at 5, item 16); lights flickering when generator is on (confirmed, consumer maintenance) (*Id.* at 5, item 17); house batteries failing to hold charge (confirmed, consumer maintenance issue, warranty exclusion)[4] (*Id.* at 5, item 18); defective step motor (confirmed, not reported) (*Id.* at 5-6, item 19); awning defect (confirmed, not reported, different warranty) (*Id.* at 6, item 22); leveling jacks (unconfirmed, not reported, different warranty) (*Id.* at 6, item 22); refrigerator did not stay cold (unconfirmed, not reported, different warranty) (*Id.* at 7, item 24); leaking living room slide (unconfirmed, not reported) (*Id.* at 7, item 25); pop up outlet in kitchen

---

[4] Fribley noted that the batteries are OEM and need to be replaced. "Batteries have been frozen due to lack of maintenance by the customer." (Fribley Report, at 5, item 18). As for the automotive battery, Fribley stated that although he had to jump start the vehicle to inspect it, the automotive battery charged during inspection, operated normally and restarted after two hours of operation. (*Id.* at 9, item 4)

defective (confirmed, not reported during warranty) (*Id.* at 9, item 32); windshield blinds would not go down (unconfirmed, not reported) (*Id.* at 9, item 33).

Fribley did confirm a few defects during his inspection without indicating whether the condition was complained of during the warranty period. First, he confirmed that the lower right hand windshield gasket was cut short about two inches and needed cosmetic repair. (Fribley Report at 7, item 26). He also confirmed that the unit had no water so he could not test whether water was available to the shower or sink. (*Id.* at 8, item 28). He did confirm that the water pump was functional and noted that McKay had conveyed in his deposition that the toilet worked, which supported the conclusion that there was no defect in the plumbing. (*Id.*) Likewise, as for whether the 120 V AC would switch over when the electrical was connected at the campground, Fribley wrote:

> 120 V AC power at campground not activated. Could not test. Had to jump start chassis battery. We then activated the generator and turned on energy management system. 120 V AC system operated normally under generator power. There is no evidence of defects in either the wiring or breaker panel confirmed. Plaintiff's expert stated that the invertor was not charging the house and chassis batteries of the 12 V system. The invertor will not charge the automotive battery. The house batteries were in such a deteriorated state due to lack of maintenance that they would not take a charge. Plaintiff's expert stated that the auxillary generator would not start and was found to have a dead battery. I started the generator by utilizing the emergency start button on the dashboard. If the customer's deposition statement is correct, a replacement transfer relay could be needed. This condition was never complained about to REV during the warranty period. This could be covered under the Vehicle Protection Plan if reported by Plaintiff.

(*Id.* at 7, item 27).

Fribley concluded that the overall condition of the RV was "above average due to low mileage, low generator hours and general overall condition." (Fribley Report at 11). He noted that the RV was filled with personal belongings at the time of inspection and gave the appearance that Plaintiffs were using the vehicle. Fribley opined "the motorhome did not contain any REV defect

that rendered it unreasonably dangerous or unsafe, or unfit for the purpose for which it was intended." (*Id.*)

## DISCUSSION

### I.   *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments

for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## II.     *Analysis*

REV moves for summary judgment on all claims. Its primary assertion related to the breach of warranty claims is that Plaintiffs failed to provide REV with an opportunity to cure the alleged defects with the RV. Secondarily, REV claims that Plaintiffs cannot show that REV breached the warranty because there were not at least three repair attempts to correct the alleged problems. Finally, as to the contention that REV violated state consumer protection laws, REV contends that the statements relied on in the sales brochure were nothing beyond "puffery" and the remaining allegations are mere attempts at repackaging their breach of warranty claim, neither of which can support a violation of Indiana's consumer laws. Before addressing these issues, however, the Court must first address the parties' arguments related to the appropriate choice of law.

As discussed above, Plaintiff's complaint and later filings allege breaches of express and implied warranties as well as violations of state deceptive consumer sales laws and the MMWA. Although the MMWA generates from a federal statute, "the MMWA 'allows consumers to enforce [limited] written and implied warranties in federal court, [as provided in section 2310(d)(1),] borrowing state law causes of action.'" *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 780 (7th Cir. 2011) (quoting *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)) (internal quotation marks omitted). Thus, "for all practical purposes, the MMWA operates as a gloss on [a plaintiff's] state law breach of warranty claims." *Id.*; see also, *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (MMWA "does not provide an independent basis for liability; it only provides for federal jurisdiction for state claims"). In other words, the MMWA relies on the state cause of action and acts as a vehicle for it in federal court. *Anderson*, 662 F.3d at 781.

When a state claim fails, so does the MMWA claim. *See Priebe*, 240 F.3d at 587; *Schimmer,* 384 F.3d at 405.

In their complaint, Plaintiffs plead in the alternative that their claims were based on either Indiana or Florida law. Under the *Erie* doctrine, federal courts in diversity cases or any case in which state law supplies the rule of decision must apply state "substantive" law but federal "procedural" law, *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 301-02 (7th Cir. 2010); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). Thus, the court "applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto–Owners Inc. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

Indiana's choice of law provisions honor contractual choice of law provisions unless the parties' choice of law contradicts public policy. *See Dearborn v. Everett J. Prescott, Inc.,* 486 F. Supp. 2d 802 (S.D.Ind. 2007) (refusing to enforce choice of law provision where doing so would contravene Indiana's public policy). The parties agree that the Warranty specifies that Indiana law "shall exclusively govern the interpretation and application of this limited warranty" (Warranty, at 10), and there is no argument that applying Indiana law disregards any sound Indiana public policy. Thus, Indiana law applies to the claims for breach of express and implied warranty.[5]

---

[5]Plaintiffs allege two warranty claims, both of which sound in contract and both of which are seemingly covered under the choice of law provision in the limited Warranty. See *Litsinger v. Forest River, Inc.,* 536 F. Supp. 3d 334, 357 (N.D. Ind. 2021) (discussing when implied warranty claims may sound in tort rather than contract). REV argues that despite the choice of law provision, Florida law should apply to the implied warranty claim. A review of Florida law explains REV's rationale for wanting to apply Florida law to this claim. Unlike Indiana, Florida requires vertical privity between a consumer and a remote manufacturer to support an implied warranty claim. *Contrast  Kramer v. Piper Aircraft Corp.* 520 So.2d 450, 458 (Fla. App. 2005) with *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005). No such privity exists between the parties here. Still, REV does not explain why this Court would not honor the parties' contracted choice of law provisions for all claims arising from the Warranty.

The parties then dispute whether Indiana or Florida law applies to the Plaintiffs' consumer claims against REV for deceptive trade practices. Plaintiffs vie for application of Indiana law while REV advocates for Florida law. But where no true conflict "important enough to affect the outcome of the litigation" exists, a court sitting in diversity should apply the forum state's law. *See Melton v. Stephens*, 13 N.E.3d 533, 539 (Ind. Ct. App. 2014) (under Indiana's choice-of-law framework, court should ask preliminarily whether the differences between the laws of the states are important enough to affect the outcome of the litigation). Here, the Court needn't embark on an extended choice of law discussion as the parties have not identified a meaningful difference between Florida and Indiana's consumer protection statutes. Thus, the Court will apply Indiana law to all claims in this case.

### a.  *Breach of Express and Implied Warranties*

Under Indiana law, to prevail on a breach of warranty claim, a plaintiff must prove four elements: "(1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages." *Matthews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019) (internal citation omitted). The parties do not dispute that an express warranty exists or that under Indiana law, there is an implied warranty of merchantability in a contract for the sale of goods if the merchant is a seller of those goods, unless excluded or modified by a contract. Ind. Code § 26-1-2-314(1). Nor is there a dispute about the theory of causation explained by Plaintiffs, that the defects were present when they bought the RV. Rather, the dispute at summary judgment centers on whether there was a breach of the express or limited warranties.

To establish a breach, the Plaintiffs must show that they provided REV with a reasonable opportunity to repair any defects and that REV did not do so. *Mathews v. REV Rec. Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019). A reasonable opportunity to repair includes giving the warrantor

notice of the defect. *Zylstra v. DRV, LLC*, 8 F.4th 597, 601 (7th Cir. 2021). Without any contractual provision, a manufacturer's actual knowledge of a defect is sufficient. *See Anderson*, 662 F.3d at 782. But the parties can impose a notice requirement under a written warranty. *See Zylstra*, 8 F.4th at 606. Besides notice, the reasonable opportunity for repair requirement has been interpreted to require repairs to be completed within a reasonable amount of time as well as a reasonable number of attempts. *See Pegg v. Nexus RVs LLC*, 2019 WL 2772444, *7 (N.D. Ind. July 2, 2019); *see also Zylstra*, 8 F.4th at 602 (considering the number of days out of service in the reasonable opportunity analysis). The Seventh Circuit has further designated that a reasonable opportunity for repair defects constitutes at least three chances for the warrantor to repair the defect. *Id.* at 603.

REV moves for summary judgment on all the Plaintiffs' warranty claims because the Plaintiffs did not comply with the requirements of REV's written warranty. REV contends that the Plaintiffs did not provide REV, rather than its authorized dealer, with an opportunity to cure, as required by the warranty. Alternatively, REV asserts that Plaintiffs cannot show that any of the alleged defects were not repaired within a reasonable number of attempts and within a reasonable time. The Court addresses each argument in turn.

### 1. REV ignored the Manufacturer's Obligations in the Warranty

REV contends that the Plaintiffs did not give REV itself a reasonable opportunity to cure any defects, as required by the warranty. The warranty states that if a dealer's repairs are inadequate, owners must provide REV with "direct written notice of any alleged unrepaired defect, or any other dissatisfaction experienced with the motorhome" so that "[REV] has the opportunity to cure the problem or dissatisfaction itself." The notice provision created a "bilateral obligation[ ]" on the parties: in exchange for REV's promise to repair defects, the Plaintiffs were required to provide REV with notice and an opportunity to cure. *See Zylstra*, 8 F.4th at 606; *see*

*also Kuberski v. REV Rec. Grp., Inc.*, 5 F.4th 775, 780 (7th Cir. 2021) (treating a notice requirement as essential to the warranty's purpose under North Carolina law). This arrangement "gives the manufacturer a chance to make amends with its customer, see what went wrong with its product, learn from its errors, and evaluate how its authorized dealers are performing repairs." *Kuberski*, 5 F.4th at 780.

REV argues that the notice provided by Plaintiffs, while sufficient to notify REV of the alleged defects, see *Kuberski*, 5 F.4th at 777 (notice requirement was satisfied after plaintiff informed manufacturer of all problems that the dealer had failed to repair), did not include an offer for REV to cure the alleged defects. REV argues that the notice Plaintiffs provided did not allow REV to repair the RV at its Indiana facility. Instead, Plaintiffs' notice specifically requested that REV cure the defects "by repurchasing this defective RV back, refunding [the Plaintiffs] money, and paying the fees/costs they are entitled to by law…" (Letter, at 4). Relying on *Kuberski*, REV argues that the Plaintiffs were unwilling to present the RV to REV for repair in Indiana.

This Court (and counsel) are intimately familiar with the facts in *Kuberski*, as the undersigned presided over a week-long trial in that case involving the same counsel as here. In *Kuberski*, after many failed repair attempts at the dealership where Mr. Kuberski bought the RV, an exasperated Mr. Kuberski sent a letter to REV with a list of every defect he had found, all unrepaired problems, and the servicing records from Camping World. The letter ended with a similar ultimatum as the Plaintiffs here:  buy back the RV or exchange it for a properly working replacement model. Unlike here, REV responded to Kuberski by extending an offer to repair all coach related issues if Kuberski "were willing to bring [the] coach to [the] facility ... in Decatur, Indiana and then pick it up when the repairs are completed." *Kuberski*, 5 F.4th at 777–78 (7th Cir. 2021). Later, REV offered to pay Kuberski's transport expenses to get the RV to Indiana. Kuberski

accepted the offer but when the transport company called to schedule pickup of the RV, Kuberski advised them not to come and that he had retained counsel. REV emphasized these facts during trial and a jury found for REV.

On appeal, the Seventh Circuit found that the warranty created bilateral obligations. "The dealer and manufacturer agreed to repair defects, but the buyer was required to provide the dealer and manufacturer with notice and an opportunity to cure the defects." *Kuberski,* 5 F.4th at 778. The panel also held that Kuberski's failure to give the RV manufacturer an opportunity to cure the defects defeated the warrant's stated purpose. *Id.* REV urges this Court to follow the *Kuberski* lead and find that Plaintiffs' letter impeded REV's opportunity to cure. That, the Court cannot do.

REV is correct that the facts here are much like those in *Kuberski,* but they are not identical. And that makes all the difference when it comes to the bilateral obligations in the Warranty. In *Kuberski* both parties complied with their Warranty obligations: Mr. Kuberski gave notice and REV offered to cure by repairing the RV at its Indiana facility. But here, Plaintiffs gave notice to REV and REV remained silent. It acknowledges it did not respond to Plaintiffs' letter but asserts that it would have been futile given the Plaintiffs' demand for a buy back. The problem in *Kuberski* was the Plaintiffs' failure to follow through with the repair offer. The problem here is REV never honored its Warranty obligation in the first instance.

Under the express terms of the Warranty, REV's obligation to "repair or replace any parts necessary to correct defects in material or workmanship" is triggered "upon receipt of notice of a claim, where the dealer was unable or unwilling to resolve the problem." (Warranty, p. 8). REV does not assert that the notice the Plaintiffs' provided was somehow deficient.[6] Thus, once the

---

[6] REV has successfully raised this defense in other cases. For instance, in *McBride v. Rev Recreation Grp., Inc.*, 2022 WL 18232012, at *6 (W.D. Wis. Dec. 13, 2022), REV challenged whether notice was provided where the McBrides did not send written notice to the P.O. box address listed on the warranty.

Plaintiffs provided notice, REV needed to act under the Warranty. It did not and it cannot now thrust its failure to act onto the Plaintiffs. REV's Motion for Summary Judgment on this issue, is DENIED.

### 2. **Reasonable Number of Attempts within a Reasonable Time**.

Next, REV asserts that it did not breach the warranties because none of the alleged defects were presented to the dealer more than 3 times and remain unrepaired. The parties spend most of their briefing debating which alleged defects were presented to a dealer for repair and how many times. They also dispute whether a repair of different components of the same area of the RV constitute a single attempt or multiple attempts. The expert opinions are not particularly clarifying on either side. Fortunately, the Court need not scour the many repair records to resolve whether three repair attempts occurred for any defect because summary judgment can be denied on other grounds.

"Indiana law is very favorable to an RV seller," *Neary v. Thor Motor Coach, Inc.,* 2022 WL 4080899, at *4 (N.D. Ind. Sept. 6, 2022), but it's not nearly as favorable as REV reads it to be. "The warrantor must have at least three opportunities *or a reasonable time in which to repair the claimed defect.*" *Neary,* 2022 WL 4080899, at *4 (emphasis added) (citing cases). In *Neary*, Judge Miller denied summary judgment noting that the manufacturer had the RV for 219 days – more than seven months. The Court determined that "a reasonable jury viewing these facts in the light most favorable to [Plaintiffs] could decide that Thor had notice and a reasonable opportunity to cure the defects on the [Plaintiffs'] RV and failed to do so within a reasonable time." *Id.*

Similarly, in *Zylstra*, the Seventh Circuit noted that properly calculating time out of service for an RV is often a complicated task and declined to create a bright line rule for how long is considered unreasonable. *Zylstra*, 8 F.4th at 606–07. In determining this time, at least for purposes

of summary judgment, the court's analysis focused on counting the days in which the RV was out of the owner's possession and in the repair shop for warranty claim related repairs. *Id.* at 607–09.

In this case, the Plaintiffs' RV was out of the Plaintiffs' possession over 200 days. REV doesn't dispute this time. Plaintiffs' expert concludes that this was an unreasonable amount of time and unfair to the Plaintiffs. Considering the evidence favorably to the Plaintiffs, whether this lengthy time to repair alleged defects caused the Warranty to fail of its essential purpose, cannot be determined by this Court. As in *Neary*, a jury must decide whether Plaintiffs received the benefit of the Warranty when the repairs took nearly seven months to complete. Thus, Defendants' motion for summary judgment is DENIED on the warranty claims.

While this Court is denying summary judgment, the Court emphasizes that Plaintiffs may have an uphill battle convincing a jury that REV breached the Warranty. Plaintiffs must show they sought and were denied repairs *during the warranty term. See Popham v. Keystone RV Co.*, 2016 WL 4993393, at *5 (N.D. Ind. Sept. 19, 2016) ("When breach of an express warranty occurs is a straightforward analysis: it must occur, if it is to occur at all, before the express warranty ends."). The record reflects that the Warranty period ended in July 2019. As the detailed factual background shows, there is a genuine issue of fact on whether many of the complained of defects were reported to REV during the warranty period.[7] Likewise, defects repaired during the warranty period would also not be relevant to this analysis. The record suggests that many issues Plaintiffs have complained of were either not reported during the Warranty period or were repaired during the Warranty period.

As for the claim for breach of implied warranty, whether a product is merchantable is often a question of fact. *See Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F. Supp. 2d 869, 880 (N.D. Ind. 1999).

---

[7] In preparation for trial, Plaintiffs should try to abandon any defects that were not complained of during the Warranty period.

19

The law imposes this obligation to protect the buyer and liberally construes the protection in his favor. *See Frantz v. Cantrell*, 711 N.E.2d 856, 859 (Ind. Ct. App. 1999). Again, Plaintiffs' expert asserts that the RV was not fit for the ordinary purpose of an RV at the time of sale or inspection. While REV disputes Grismer's conclusions and the basis for them, that dispute goes to the weight of the evidence and is for a jury to decide. The Court has already determined that questions of fact preclude the grant of summary judgment on the express warranty claim. Thus, it cannot decide as a matter of law whether REV breached the implied warranty of merchantability.

### b. *Magnuson-Moss Warranty Act Claims* (MMWA)

REV also moves for summary judgment on Plaintiffs' allegations of breaches of express and implied warranty under the federal Magnuson-Moss Warranty Act. The Magnuson-Moss Act "does not provide an independent basis for liability, rather it only provides for federal jurisdiction for some state claims." *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). A claim under the Magnuson-Moss Act rises and falls with the state law claims. *Id.* As set forth above, the Court denied summary judgment on the express warranty claim and the implied warranty claim. Thus, REV's motion for summary judgment on the MMWA claim is also denied.

### c. *Indiana Deceptive Consumer Sales Act claim*

The Plaintiffs' final claim is that REV violated the Indiana Deceptive Consumer Sales Act (IDCSA). Under the IDCSA, Plaintiffs' claims can be categorized as (1) uncured deceptive acts (which do not require a showing of an intent to defraud or mislead); and (2) incurable deceptive acts (which require such a showing). Ind. Code § 24-5-0.5-2(7) & (8). The Plaintiffs allege that the uncured deceptive acts are (a) misrepresenting the condition of the RV in its sales brochure; (b) concealing the true condition and history of the RV; (c) distributing the RV for sale with known defects; and (d) breaching the warranty. In response, REV first asserts that if Plaintiffs are relying

on advertisements and sales brochures to establish a deceptive act, the Seventh Circuit has determined that statements in ads and brochures are "unverifiable opinion" and classic examples of puffery." *Zylstra*, 8 F.4th at 610. Second, REV asserts that the remaining claims of deceptive acts are all a key part of the Plaintiffs' breach of warranty claims and a breach of contract does not suffice to support a claim of false representation under the Act. *McKinney v. State*, 693 N.E.2d 65, 73 (Ind. 1998) ("Although these allegations may support a breach of contract claim, without more flesh these bare bones do not state claims under the Act. A broken promise is not ipso facto a false representation.").

The Court agrees with REV on both arguments. Statements in sales brochures that constitute "mere puffery" are not actionable under the IDCSA. *See Kesling v. Hubler Nissan Inc.,* 997 N.E.2d 327, 333 (Ind. 2013). As the *Kesling* court observed:

> …[P]uffery consists of "empty superlatives on which no reasonable person would rely," or "meaningless sales patter,"— what Learned Hand called the "kind[ ] of talk which no sensible man takes seriously, and if he does he suffers from his credulity."

*Id.* (internal citations omitted). Here, the language that Plaintiffs complain of in the sales brochure is that the 2017 Holiday Rambler is suitable for a "rambling weekend" or a "cross-country holiday adventure." This is nothing more than salesmanship or "meaningless sales patter" and not actionable under the IDCSA. Additionally, Indiana law is clear that a mine-run breach of warranty claim isn't enough either. *See McKinney,* 693 N.E.2d at 67. The rest of the allegedly deceptive claims all build and arise from the Plaintiffs' breach of warranty claims. Thus, they cannot independently be considered deceptive acts under the IDCSA. REV's motion for summary is GRANTED on the claim under the IDCSA.

## **CONCLUSION**

Based on the reasoning above, REV's Motion for Summary Judgment (ECF No. 49) is GRANTED as to Plaintiffs' claim under the IDCSA and denied in all other respects. A status and scheduling conference to schedule the matter for trial will be set by separate entry.

SO ORDERED on February 3, 2023.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT